# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JODY SCHULTZ, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 15-848 |
| | ) Chief Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) Re: ECF No. 41 |
| DEPARTMENT OF UNITED STATES | ) |
| AIR FORCE, National Guard Bureau, | ) |
| | ) |
| Defendant. | ) |

## OPINION

**KELLY, Chief Magistrate Judge**

Jody Shultz ("Plaintiff") has brought this action against the Department of United States Air Force, National Guard Bureau ("Defendant"), alleging that she was not hired for a position as a social worker because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Presently before the Court is Defendant's Motion for Summary Judgment. ECF No. 41. For the reasons that follow, the Motion will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a 62-year-old woman with a Bachelor of Arts degree in Criminology and a Master's degree in Educational Counseling. ECF No. 43 ¶¶ 1-3. She is also a certified professional counselor. Id. ¶ 4.

Between 2011 and March 2013, Plaintiff was employed as the Director of Psychological Health by Optimization Consulting, a private contractor that provided counseling and other mental health services for the Air National Guard, 171st Air Refueling Wing in Coraopolis, Pennsylvania. In March 2013, Goldbelt Glacier Health ("Goldbelt") took over the contract at the

171st Air Refueling Wing, but Plaintiff continued to serve as the Director of Psychological Health. While employed in this position for Goldbelt, Plaintiff did not have any employees working under her. Id. ¶ 10.

Sometime in 2014, Plaintiff learned that Defendant planned to end its contract with Goldbelt on January 31, 2015, and provide its own counseling services. Id. ¶¶ 11-12. Thereafter, Plaintiff started to seek other employment and applied for jobs posted on the USAJOBS website. Id. ¶ 17. She applied for two positions with the Veterans Administration and a position as a psychologist with the Air Force. Id. ¶¶ 18, 20. She submitted each application through the USAJOBS website. Id. Plaintiff was not selected for these positions. Id. ¶¶ 19, 20.

On September 28, 2014, Plaintiff submitted an online application via the USAJOBS web site for a social worker position with the Air Force (Job Announcement Number AFPC-MEDEH-1068623-0185). Id. ¶ 21. There were vacancies for the position throughout the country, including in Coraopolis. Id. ¶ 22. The announcement was advertised with "open period" of April 1, 2014, to September 30, 2014, and applicants were advised that "[t]he length of time [their] application[s] will remain active will vary based on the closing date of this public notice." Id. ¶ 24. The basic requirements for the position included a "master's degree in social work from a school accredited by the Council on Social Work Education." Id. ¶ 23. Prospective applicants were also required to have a "Clinical Social Work license to practice independently from a U.S. jurisdiction." ECF No. 45-4 at 20. According to a declaration by Christine Ross, the Human Resource Specialist for the Air National Guard, "social workers were characterized as 0185 series employees, and the federal hiring guidelines administered through the Office of Management and Budget . . . required such employees to have a master's degree in social work[.]" ECF No. 45-5 ¶ 4. In addition, since "social workers would be working independently

at each National Guard Wing where they did not have the benefit of other social workers within their unit to consult . . . the Air Force elected to add the additional hiring requirement that each social worker must have a 'Clinical Social Work license[.]'" Id. For reasons unexplained in the record, no social workers were hired from Job Announcement Number FPC-MEDEH-1068623-0185. ECF No. 43 ¶ 27. Thus, "all applications submitted under this announcement were terminated and not carried over to subsequent job postings or social worker vacancies within the Air Force." ECF No. 45-5 ¶ 4.

After the "open period" for the first announcement ended, the Air Force posted another announcement for a social worker position with an "open period" from October 1, 2014, to March 31, 2015 (Job Announcement Number AFPC-MEDEH-1219383-0185). ECF No. 43 ¶ 28. The job announcement set forth the requirements that the prospective applicant have a "master's degree in social work from a school accredited by the Council on Social Work Education" and a "Clinical Social Work license to practice independently from a U.S. jurisdiction." Id. ¶¶ 30-31. In order to apply, applicants were required to complete an application package online at the USAJOBS website by 11:59 PM (EST) on Tuesday, March 31, 2015. Id. ¶ 33. This package was to include a resume, occupational questionnaire, transcripts, registration/license, and veterans' preference (if applicable). Id. ¶ 34. The announcement made clear that an applicant's "application package (resume, supporting documents, and responses to the questionnaire) will be used to determined [her] eligibility, qualifications, and quality ranking for this position. Please follow all instructions carefully. Errors or omissions may affect your rating or consideration for employment." Id. ¶ 36. The job announcement also notified the applicant that it was "the applicant's responsibility to verify that the information entered, uploaded or faxed (i.e., resume) is received, accurate and submitted by the closing date." Id. ¶ 35.

3

Plaintiff did not submit an application for this job announcement. Id. ¶ 38. She testified that she thought the application she submitted regarding Job Announcement Number AFPC-MEDEH-1068623-0185 in September 2014 would be considered for this vacancy because "[i]t was for the same position" and the two announcements were "worded the same." ECF No. 52-1 at 5. Plaintiff did, however, send a letter dated December 23, 2014, to Colonel Darrick Cunningham, who she understood to be the selecting official for the social worker position.[1] Id. at 25. In the letter, Plaintiff advised Colonel Cunningham that she "wish[ed] to retain [her] position as Wing Director of Psychological Health for the 171 ARW." Id. Moreover, in an e-mail dated February 9, 2015, and addressed to Cunningham and various others with military e-mail addresses (and cc'd to Plaintiff's counsel), Plaintiff wrote, "To All: I am interested in a position with the Air Force/Air National Guard in my capacity as an LPC effective immediately." ECF No. 45-8 at 9.

On January 7, 2015, Plaintiff received a letter formally notifying her that Goldbelt's contract would be ending on January 31, 2015, and that her employment would be terminated on that date. ECF No. 43 ¶ 13. On January 29, 2015, Plaintiff sent an e-mail to "[a]ll [m]embers" of the 171st Air Refueling Wing, letting them know that January 30 would be her last day. Id. ¶ 15. "I'm not leaving because I want to and I'm not being fired[,]" she wrote. Id. "The position is changing and I don't have the correct credentials to change with it." Id. By that, Plaintiff meant that she was told that she could not retain her position because she was not a social worker. ECF No. 52-1 at 2.

Three people were eventually referred to the selecting official for the social worker position at the 171st Air Force Refueling Wing listed in Job Announcement Number AFPC-

---

[1] According to Ross, the human resource specialist, the selecting official was actually Colonel Gregg A. Perez. ECF No. 53-1 ¶ 4.

MEDEH-1068623-0185: Matthew J. Dalrymple, Joshua M. Hudson, and Bonnie B. Shultz. ECF No. 43 ¶ 41. Dalrymple, who was born in 1975, was selected for the position and began work on April 5, 2015. Id. ¶ 46. He is a U.S. Army veteran with a master's degree in social work and previously worked as a social worker for the Department of Veterans Affairs. Id. ¶¶ 47-48.

On February 5, 2015, Plaintiff, through her attorney, faxed a letter to the National Guard to "request EEO counselling leading to a formal complaint for age discrimination – failure to be hired by Air National Guard/US Air Force as of February 1, 2015." ECF No. 45-6 at 28. On February 19, 2015, Plaintiff submitted a "Charge of Discrimination" to the Air National Guard, alleging that she applied for a position for which she was qualified but was not hired because of her age. ECF No. 44 ¶¶ 3-5. She indicated therein that the alleged discrimination took place between February 1, 2015, and February 12, 2015. Id. ¶ 4.

Plaintiff's request for EEO counseling was eventually brought to the attention of Kenneth Vybiral, the Equal Employment Manager and Equal Opportunity Advisor for the Pennsylvania National Guard. Id. ¶ 2. On March 13, 2015, Vybiral sent an e-mail to Plaintiff's counsel with "the forms that a[n] EEO counselor would have to speak to complainant [about], and assist with." ECF No. 45-7 at 7. Vybiral asked Plaintiff's counsel to return the forms to him once they were completed. Id. The completed forms were returned on March 19, 2015. Id. at 8. Thereafter, Vybiral "contacted the resident EEO Counselor at the 171st Air Refueling Wing and had him on standby to counsel and assist [Plaintiff] with her EEO concerns." ECF No. 45-9 ¶ 4.

At some point thereafter, Vybiral had a phone conversation with Plaintiff's counsel. Id. According to Vybiral, he attempted to schedule an EEO counseling session, but Plaintiff's counsel "refused to permit anyone to speak to [Plaintiff] (regarding EEO counseling or otherwise) and requested that all documentation in [Plaintiff's] case be addressed to him." Id.

5

Plaintiff's counsel has submitted an affidavit[2] in which he states that he "informed Mr. Vybiral that [his] standard procedure is to ask that the interview be done by written interrogatories which should be routed through [his] office." ECF No. 52-5 ¶ 6. Plaintiff's counsel says that he has "followed this procedure . . . in hundreds of EEO and EEOC investigations without issue or problem[,]" and, as he recalls, "Mr. Vybiral did not indicate that this procedure was unacceptable." Id. ¶¶ 7-8. However, no interrogatories were ever sent and the matter was never assigned a case number. Id. ¶ 9. According to Vybiral, "case numbers are generally assigned when the matter enters the formal stage which occurs after initial counseling[.]" ECF No. 45-9 ¶ 5. However, because of Plaintiff's "refusal to participate in EEO counseling, her case was not processed any further." Id.

Plaintiff initiated this action on June 29, 2015, naming both Goldbelt and the Air Force as Defendants. ECF No. 1. On February 19, 2016, Plaintiff filed a Stipulation of Dismissal as to Goldbelt. ECF No. 26. Following the close of discovery, Plaintiff filed a Motion to Amend the Complaint to conform to the evidence, in which she sought "to add her not being selected from the Fall 2014 USA Jobs online application process as well as the February 2015 re-posting of the same exact position." ECF No. 32. Defendant opposed the motion. ECF No. 34. On June 10,

---

[2] Defendant's request to strike the affidavit submitted by Plaintiff's counsel is denied for two reasons. First, contrary to the affidavits in the cases cited by Defendant, this affidavit is based on Attorney Sanders's firsthand knowledge of the conversation and is entitled to consideration. See Brillhart v. Sharp, Civ. A. No. 07-1121, 2008 WL 2857713, at *1 (M.D. Pa. July 21, 2008) (explaining that attorney affidavits are permissible under Fed. R. Civ. P. 56(e) as long as they are based on personal knowledge). Second, while the Rules of Professional Conduct "prohibit an attorney from acting as both an advocate and witness at trial[,]" id., "the [Rules] do[] not delineate rules of evidence but only set[] forth strictures on attorney conduct," United States v. Birdman, 602 F.2d 547, 556 (3d Cir. 1979). "Thus, it is the settled rule in this Circuit and in most jurisdictions that an attorney is not incompetent as a witness at trial, but that admission of such testimony is a matter largely for the discretion of the trial court." Id. The Court finds it an appropriate exercise of discretion to allow Attorney Sanders to offer evidence through his affidavit on the narrow issue of whether Plaintiff exhausted administrative remedies.

2016, the Court issued an order denying the motion. ECF No. 35. Plaintiff filed a motion for reconsideration, ECF No. 36, which the Court also denied, ECF No. 39. Defendant's Motion for Summary Judgment followed on August 19, 2016. ECF No. 41. The Motion has been fully briefed and is ripe for disposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed. R. Civ. P. 56(C). The moving party has the initial burden of proving the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); UPMC Health Sys. v. Met. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260

7

F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at *1 (3d Cir. 2010) (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations; instead, it is limited to deciding whether there are any disputed issues and, if so, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A fact is "material" if its resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### III. DISCUSSION

Defendant advances three arguments in support of its motion for summary judgment. It argues that (1) Plaintiff failed to exhaust administrative remedies; (2) Plaintiff cannot establish a *prima facie* case of discrimination because she never submitted an application for Job Announcement Number AFPC-MEDEH-1219383-0185 and, in any event, was not qualified for the position because she did not have a master's degree in social work and a clinical social work license; and (3) assuming that Plaintiff could establish a *prima facie* case, she nonetheless cannot establish pretext. Defendant's arguments are well taken. The Court finds that Plaintiff did, indeed, fail to exhaust her administrative remedies. Alternatively, she has failed to establish a *prima facie* case of age discrimination.

## A. Failure to Exhaust Administrative Remedies

The ADEA does not expressly require exhaustion of administrative remedies for federal employees or prospective federal employees. As the United States Supreme Court has explained, "[Section] 15 of the ADEA provides two alternative routes for pursuing a claim of age discrimination. An individual may invoke the EEOC's administrative process and then file a civil action in federal district court if [s]he is not satisfied with [her] administrative remedies." Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991) (citing 29 U.S.C. § 633a(b) and (c)). Alternatively, such an individual "can decide to present the merits of [her] claim to a federal court in the first instance," as long as she has given the EEOC at least 30 days' notice of her intent to file suit and the suit is filed within 180 days of the discriminatory act. Id. (citing 29 U.S.C. § 633a(d)).

Here, Plaintiff started down the first route when, through her attorney, she faxed the letter to the National Guard requesting EEO counseling. However, for reasons the parties dispute, she never obtained a final decision from the agency. The question, then, is whether Plaintiff's failure to complete the administrative process spells doom for this action.

Relying on the decision of United States Court of Appeals for the Third Circuit in Purtill v. Harris, 658 F.2d 134, 138 (3d Cir. 1981), Defendant argues that "[f]iling a civil action in Federal Court prematurely or prior to completion of this process is grounds for dismissal." ECF No. 42 at 5. "The ADEA is silent on whether a plaintiff who has started the administrative process . . . must reasonably pursue the process, as an exhaustion requirement would ordinarily entail." Rann v. Chao, 346 F.3d 192, 195 (D.C. Cir. 2003) (citations omitted). Further, there is a split among the circuits on this issue. See Bankston v. White, 345 F.3d 768, 772-74 (9th Cir. 2003); Stevens, 500 U.S. at 9-11 (declining to resolve the circuit split). In Purtill, however, the

9

Third Circuit held that "a plaintiff bringing an action under section 15 of the ADEA must exhaust the administrative remedies he has chosen to pursue before filing suit." 658 F.2d at 135. The plaintiff in Purtill argued that he was excused from exhaustion "because 180 days ha[d] passed since he filed his administrative complaints[,]" and the EEOC had still not rendered a decision. Id. at 138. But the Third Circuit rejected that contention. "Were this a Title VII claim," the Third Circuit explained, "we would agree with his position because 42 U.S.C. § 2000e-16(c) provides that a plaintiff may proceed to district court 180 days after filing a complaint with the EEOC. Conspicuously absent from the corresponding section of the ADEA, 29 U.S.C. § 633a(c), is a similar provision allowing suit in the absence of a final decision by the EEOC." Id. "[I]n addition to evident congressional intent[,]" the Third Circuit found that "prudential reasons" supported its holding:

> Allowing a plaintiff to abandon the administrative remedies he has initiated would tend to frustrate the ability of the agency to deal with complaints. All participants would know that at any moment an impatient complainant could take his claim to court and abort the administrative proceedings. Moreover, such a course would unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation and conciliation. Absent an indication of contrary congressional intent, we will not countenance circumventing the administrative process in this manner.

Id.

Plaintiff does not quarrel with this requirement.[3] Instead, she argues that "there is at least

---

[3] The continuing viability of Purtill has, however, been called into question by subsequent amendments to the EEOC's regulations. As one district court in this Circuit has explained, "the Purtill decision came before the 1992 revision of the statute's implementing regulations, which currently treat ADEA claims the same as Title VII claims with regard to the alternative of opting out of the administrative process after 180 days." Aladjem v. Cuomo, Civ. A. No. 96-6576, 1997 WL 700511, at *2 (E.D. Pa. Oct. 30, 1997) (citing 57 Fed. Reg. 12634 (April 10, 1992)). That revision was a direct response to "the exhaustion of remedies problem raised by the decisions in Purtill v. Harris, 658 F.2d 134, 137 (3d Cir. 1981) . . . and other cases." 57 Fed. Reg. 12634. "In holding that exhaustion was required under the regime prevailing prior to this 1992 revision, the Purtill court had reasoned that there was nothing in the relevant section of the ADEA that was

a genuine issue of material fact as to whether the EEO failed to perform its statutory duty by conducting the initial counseling via written interrogatories." ECF No. 49 at 12. Defendant counters that Plaintiff's counsel's "insistence upon following his own preferred course of administrative exhaustion must be rejected, and his failure to cooperate with Air Force EEO counseling procedure constitutes a failure to exhaust administrative remedies." ECF No. 53 at 2-3.

The Court agrees with Defendant that nothing in the regulations suggests that the preferred approach of Plaintiff's counsel – interview by interrogatory – is a suitable alternative to the "initial counseling session" contemplated by 29 C.F.R. § 1614.105(b)(1). Nor does anything in the Commission Management Directives, with which EEO counselors must comply when conducting counseling, so suggest. Id. § 1614.105(c). In view of these considerations and irrespective of what Plaintiff's counsel may have done in prior cases, Defendant had every right to insist on formal compliance with the regulations. Even if, as Plaintiff claims, Vybiral "acquiesced" in the request of Plaintiff's counsel to conduct the counseling via interrogatories, when the interrogatories were not forthcoming, counsel could have reached out to Vybiral to attempt to resolve the matter, rather than doing nothing to pursue the claim for several months. Counsel could have also formally abandoned the administrative proceedings and served the EEOC with notice of intent to sue, which would have opened the door to the filing of this suit. See Sisco v. Jewell, Civ. A. No. 14-08057, 2015 WL 11182028, at *8 (D. Ariz. Jan. 29, 2015).

---

comparable to the Title VII provision allowing suit after 180 days, and that nothing in the legislative history explained the difference." Aladjem, 1997 WL 700511, at *2. Under the current regulations, though, that difference no longer exists. As a result, it is not clear that the Court of Appeals would reach the same conclusion today were it faced again with the issue it faced in Purtill. But see Slingland v. Donahoe, 542 F. App'x 189, 193 (3d Cir. 2013) (applying the exhaustion requirement, though without mention of the amendments to the regulations); Haines v. Adm'r, U.S. Fed. Transit Admin., 579 F. App'x 63, 65 (3d Cir. 2014) (same).

Instead, the claim was allowed to remain in administrative limbo, and "there was no fact-finding or attempt to resolve Plaintiff's claim prior to filing suit[.]" Id. Because Plaintiff effectively abandoned the administrative process instead of taking any affirmative steps to resolve her claim, "[i]t cannot be said that Plaintiff cooperated with the administrative process for investigating her claim." Id. Defendant is, therefore, entitled to summary judgment.

### B. Plaintiff's *Prima Facie* Case

Assuming, *arguendo*, that Plaintiff's failure to complete the administrative process is excusable, Defendant is nonetheless entitled to summary judgment because Plaintiff has not established a *prima facie* case of age discrimination. "To make out a *prima facie* case of age discrimination in a case of failure to hire, plaintiff must show 1) that [s]he belongs to the protected class, 2) that [s]he applied for and was qualified for the job, 3) that despite [her] qualifications [s]he was rejected, and 4) that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination." Fowle v. C & C Cola, a Div. of ITT-Cont'l Baking Co., 868 F.2d 59, 61 (3d Cir. 1989). As Defendant correctly contends, there is no evidence that Plaintiff actually applied for the position in question or that she was qualified for the position.

#### 1. Failure to formally apply

As already noted, in order to establish a *prima facie* case, a plaintiff must have "'applied . . . for a job for which the employer was seeking applicants[.]'" Murray v. Beverage Distrib. Ctr., 533 F. App'x 98, 102 (3d Cir. 2013) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). The United States Court of Appeals for the Third Circuit has "held that failure to formally apply for a job will not automatically bar a plaintiff from establishing a *prima facie* case for discriminatory hiring." Murray, 533 F. App'x at 102 (citing EEOC v. Metal Serv. Co.,

892 F.2d 341, 348 (3d Cir. 1990)). In such case, however, a plaintiff still "must show that [s]he made every reasonable effort to convey [her] interest in the job to [her] employer[,] [s]he was deterred from applying by the employer's discriminatory practices and would have applied for the position but for those practices, or [s]he had a genuine and real interest in the position but reasonably believed that a formal application would be futile." Id. (citing Newark Branch, NAACP v. Town of Harrison, 907 F.2d 1408, 1415 (3d Cir. 1990)).

Plaintiff does not dispute that she did not apply via USAJOBS for Job Announcement Number AFPC-MEDEH-1219383-0185. Instead, she argues that she "made every reasonable effort to convey her interest in the position to the Defendant." ECF No. 49 at 5. She points to the fact that she previously submitted an application for Job Announcement Number AFPC-MEDEH-1068623-0185 on USAJOBS on September 28, 2014, two days before the end of the "open period" for that announcement; sent a letter to Colonel Cunningham stating that she wished to continue to serve in the same capacity in which she had been serving; submitted several letters of recommendation during the "open period" for the second announcement; and sent the February 9, 2015, e-mail to various individuals expressing her interest in obtaining a position with the Air Force. Id.

These actions do not satisfy the standard set forth in Metal Service Company. There, "the plaintiffs did everything reasonably possible to convey their interest in applying for a job by 'follow[ing] precisely the procedure established by [the employer] for how a person applies for a job at the company.'" Murray, 533 F. App'x at 103 (quoting Metal Serv. Co., 892 F.2d at 349). Here, by contrast, Plaintiff did not take any steps toward complying with the formal application requirements for Job Announcement Number AFPC-MEDEH-1219383-0185, which were explicitly set forth in the announcement. Because of the express language in the first job

announcement, Plaintiff knew or should have known that the application she submitted in September would not be held over for consideration for the second posting, irrespective of whether the two announcements dealt with the same position. In order to apply for Job Announcement Number AFPC-MEDEH-1219383-0185, applicants were required to complete an application package online at the USAJOBS website by 11:59 PM (EST) on Tuesday, March 31, 2015. ECF No. 43 ¶ 33. The package was to include a resume, occupational questionnaire, transcripts, registration/license, and veterans' preference (if applicable). Id. ¶ 34. The announcement made clear that an applicant's "application package (resume, supporting documents, and responses to the questionnaire) will be used to determined [her] eligibility, qualifications, and quality ranking for this position." Id. ¶ 36. The job announcement also notified the applicant that it was "the applicant's responsibility to verify that the information entered, uploaded or faxed (i.e., resume) is received, accurate and submitted by the closing date." Id. ¶ 35. All that Plaintiff had to do to express her continued interest in the position was upload the required documents to USAJOBS when she saw the second announcement – yet she failed to do so.

Plaintiff's failure to apply for the position was not overcome by the letter she sent to Colonel Cunningham or the e-mail she sent on February 9, 2015. In those communications, Plaintiff made no mention that she wanted to apply for the vacant social worker position. She only discussed her general interest in obtaining a position with Defendant. That was not enough. See Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1345 (11th Cir. 2003) ("A general interest in being rehired without submitting an application is not enough . . . when the defendant-employer has publicized an open position."). Since Plaintiff did not apply for the position posted in Job Announcement Number AFPC-MEDEH-1068623-0185 and she did not do more than express

interest in continued employment, construing the facts in the light most favorable to the Plaintiff, she has failed to make out the first part of the second prong of a *prima facie* case of age discrimination. Thus, her claim is subject to summary judgment.

### 2. Lack of required qualification

Even assuming that Plaintiff applied for the position at issue, she has not adduced evidence that she was qualified for the position. It is undisputed that one of the "basic requirements" for the social worker position was a master's degree in social work. Prospective applicants were also required to have "[a] Clinical Social Work license to practice independently from a U.S. jurisdiction." Matthew Dalrymple, the applicant Defendant hired for the position at the 171st Air Refueling Wing, possessed both of these qualifications. ECF No. 43 ¶ 7. Plaintiff did not possess either a master's degree in social work accredited by the Council on Social Work Education nor was she "an accredited social worker." ECF No. 43 ¶ 5. As a result, Plaintiff cannot establish a *prima facie* case of discrimination. See Schaffner v. Glencoe Park Dist., 2 56 F.3d 616, 620 (7th Cir. 2001).

Plaintiff argues, however, that she should be deemed qualified because "she performed the duties of the position for four years while employed by independent contractors and was commended by the Air Force for her performance[.]" ECF No. 49 at 7. These facts are entirely irrelevant, as Plaintiff herself appeared to recognize when she told her co-workers that "[t]he position [was] changing" and she lacked the "correct credentials to change with it" – a master's degree in social work and a social work license. Defendant had every right to make these credentials a requirement for the job. "What the qualifications for a position are, even if those qualifications change, is a business decision, one courts should not interfere with." Gorence v. Eagle Food Ctrs., 242 F.3d 759, 765 (7th Cir. 2001). It is simply not the Court's job to "tell

15

employers what the requirements for a job must be." Id.

Plaintiff also attempts to create a genuine issue of material fact regarding whether she was qualified by arguing that Defendant hired "a number of individuals" as social workers "who were, like Plaintiff, licensed professional counselors rather than licensed social workers[.]" ECF No. 49 at 5-6. However, according to Christine Ross, these employees were hired as psychological health program specialists, not social workers. ECF No. 54-1 ¶ 3. Thus, Plaintiff's argument fails.[4]

In sum, Plaintiff has thus failed to make out the second part of the second prong of a *prima facie* case of age discrimination.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted. Accordingly, the following Order is entered:

## ORDER

AND NOW, this 2nd day of February, 2017, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment, ECF No. 41, is GRANTED. The Clerk of Court shall mark this case CLOSED.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record
 (via CM/ECF)

---

[4] Because Plaintiff has not established a *prima facie* case, the Court need not consider whether she has adduced evidence of pretext. The Court notes, however, that she relies on the very same evidence that was insufficient to establish her *prima facie* case in her pretext argument. Thus, the Court's prior analysis would apply with equal force were it necessary to reach the issue of pretext.